Hear ye, hear ye, hear ye. United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good afternoon. This is Judge Wilson in Tampa, Judge Joe Pryor is in Atlanta, and Judge Britt Grant is in Atlanta. And we're here for oral arguments in Kenneth Eugene Smith v. Commissioner of the Alabama Department of Corrections. I would advise counsel that we have read the briefs, and we've examined relevant parts of the record that will assist you in confining your arguments this afternoon. Mr. Thomas will be our courtroom deputy, and he is the timekeeper, and he will advise you when your time to argue has expired. And I believe the appellant Smith has reserved some time for rebuttal argument. And our timekeeper will advise you when your time has expired. And we are ready to proceed. Mr. Robert Grass is here for Kenneth Eugene Smith. Richard Dierman Anderson is here for the Commissioner of the Alabama Department of Corrections. Mr. Grass, are you ready to proceed with your argument? I am, Your Honor. You may. Thank you, Your Honor, and may it please the court. I am Robert Grass on behalf of Appellant Kenneth Eugene Smith. Kenny Smith is on death row in Alabama despite his jury's recommendation that he be sentenced to life without parole, and despite a lack of evidence that he inflicted the fatal stab wounds on the victim. He also is on death row even though his capital murder conviction is based on critical evidence that the state obtained from a search of his home under a warrant that was facially invalid under then-governing Alabama law. The evidence obtained consisted of a VCR that had been taken from the victim's home and a statement taken by investigators that followed directly from the search, Mr. Smith's subsequent arrest, and custodial interrogation, without which the state would not have been able to secure a capital murder conviction. But despite the undisputed critical nature of the evidence in the state's case against Mr. Smith, and notwithstanding his trial counsel's attempt to suppress the evidence, Mr. Smith's trial counsel failed to investigate and make the legal argument that the warrant was facially invalid, which would have led to suppression of the evidence. The search warrant in this case was directed to any sheriff in the state of Alabama, but Alabama law at the time required that it be directed to the Lauderdale County Sheriff where Mr. Smith was living and where the search took place. That conclusion follows from two sources that were available to Mr. Smith's trial counsel at the time of his trial. The first source is the plain wording of the statutes governing the issuance and execution of search warrants in 1988 when Mr. Smith's home was searched. The second source is the statutory is the case law construing the statutory framework. Beginning with the statutory framework, Alabama code section 15-5-1 defines a search warrant. Judge Brick-Grant, I've got a question. Before you get to whether the warrant was valid under the current statutory law, what do you make of Rule 3.10 that was subsequently passed? First of all, do you think that that rule is retroactive? And second of all, do you think that the warrant would be valid under that rule? Your Honor, I do not think that the warrant, I'm sorry, that the Alabama Rules of Criminal Procedure have retroactive application. As you know, they were adopted in 1991, three years after the search that took place in this case. And the statute, I'm sorry, the statute did not retroactively validate a search warrant that was invalid when issued. The rules, though, are relevant, at least as they apply to some of the cases on which the district court relied and on which the state relies in its briefs in this court. The, unlike the statutes that govern the search in Mr. Smith's case, which explicitly required that the search warrant be directed to the sheriff or any constable of the issuing county, the Alabama Rules of Criminal Procedure 3.6 and 3.10 provide that a search warrant may be directed to any law enforcement officer within Alabama. And so, based on that precise distinction, the Alabama Court of Criminal Appeals, in the recent case of State v. Hunt, decided this year, concluded that a warrant directed to any law enforcement officer in Alabama is valid, notwithstanding Section 15-5-5, which has more limiting requirements. So, search warrants issued post-1991 directed to any law enforcement officer in Alabama are valid under the Rules of Criminal Procedure, even though they would be invalid under the statutes that governed when the search took place at Mr. Smith's home. And, for example, Usury v. State, on which the state relies, and Little v. Gaston, on which the district court relied, involved the construction of the Rules of Criminal Procedures. Those cases did not address the issue here, which is the validity of a warrant issued prior to the adoption of the Rules of Criminal Procedure, and whether such a warrant was valid, if not directed, as Section 15-5-5 mandated. Do you agree that the language of this warrant would be valid under the rules as they exist now? I'm not asking you to agree that they were before. We can get to that. But do you agree that the approval in State v. Hunt would extend to the text of this warrant? Your Honor, I agree that had the Alabama Rules of Criminal Procedure applied in 1988, that the warrant as issued would have been valid. But, as I said at the outset, I disagree that there could have been retroactive application of the Rules of Criminal Procedure to the warrant issued prior to their adoption in this case. Do you quarrel with Rule 1.5, which provides that the rules shall govern all criminal proceedings without regard to when the proceeding was commenced? Generally, do you think that's generally invalid, or do you think that's not effective here for a particular reason? I think it's—Your Honor, I think that it's not effective here because that would be ex post facto application in violation of the United States and Alabama Constitutions. And we cited cases in our reply brief which stand for that proposition, one case involving bail pending appeal. And at the time that bail pending appeal in that case was granted, the rules did not apply. Subsequently, the rules were amended to apply to cases, as you suggest, regardless of when they were initiated. And the court concluded that you can't retroactively apply that rule when the rule in existence when bail was applied did—permitted bail pending appeal, whereas the new rule gave discretion to the judge to deny bail pending appeal. So I think that the case law demonstrates that a warrant invalid when of the Alabama Rules of Criminal Procedure. This is Judge Wilson. Alabama cites several Alabama criminal appeals court cases that were decided under the old rule that uphold the validity of warrants containing similar language to the one that we have in this case. They include Meade v. State, Palmer v. State, Haines v. State, Reeds v. State. How are you going to distinguish those cases? Your Honor, I think that those cases are consistent with the statutory framework as we construe it. And that is that this notion that a search warrant must be executed by a law enforcement officer from the issuing county derives from Section 15.5-5-5 of the statute, which says that the warrant must be directed to a law enforcement officer from the issuing county. And that's because Section 15-5-7, which governs the execution of warrants, only says that it must be executed by a law enforcement officer to whom it's directed. So if it's not directed to a law enforcement officer from the issuing county, then Section 15-5-7 doesn't require that it be executed by a law enforcement officer from the issuing county. And I think that's the way Rivers v. State has to be understood in that context. In that case, the warrant was directed to the ABC enforcement agency. And therefore, under the language of the statutes, they had the authority to execute it because it was directed to them. So the reason that the warrant was invalid in Rivers was because it was directed improperly. And there has to be a valid warrant before we worry about who executes it or how it's executed. And I think that the cases all can be considered or should be considered under that framework. Mr. Green, this is Jill Pryor. I have a question about Rivers. As I read Rivers, it seems to say that a warrant that's invalid on its face can still be valid in execution if an invalidly named official notifies the proper county officials and obtains their assistance. And so I'm wondering, even if you're correct about your facial invalidity argument, why wasn't the problem cured by the fact that Investigator Ford assisted Captain May with the execution of the warrant? Well, because, Your Honor, that construction of the statutory framework essentially makes Section 15-5 nullity or at best a mere suggestion. Because in that case, if the statute is construed in that way, then it really doesn't matter whether there is compliance with Section 15-5-5 because the statute could be directed, for example, to any sheriff without geographic limitation at all as long as a local law enforcement officer participated in the execution. Well, right. And that's kind of my question because I don't see any case, it seems to me in the cases that Judge Wilson mentioned and also in Rivers, the Alabama Code provisions are construed very leniently. Is there a case where any Alabama court has accepted your argument that the language about to whom the warrant is directed would by itself invalidate the warrant based on the statute? Has any court accepted your argument? Well, Your Honor, respectfully, I believe that Rivers has. And Rivers and other cases, federal cases applying Alabama law as well as Alabama state court decisions say that the statute must be strictly construed. And none of them say that close enough is good enough. And they have to be strictly construed because what the legislature had in mind was requiring that a local law enforcement officer would be in charge of searches within that officer's jurisdiction. And if in contravention of Section 15-5-5, the search warrant is directed more broadly than to officers in the local jurisdiction, then that by necessary definition invites officers outside the local jurisdiction to execute search warrants and to be in charge of search warrants outside their local jurisdictions. And that's precisely what happened here where Captain Ronnie May from Colbert County obtained the search warrant, requested the assistance of others in executing it, and was in charge of the team that executed the search warrant. Well, that sounds to me just like what the court said in Rivers, where the court said their efforts, referring to the ABC agents, could have been validated had they notified the proper county officials and obtained their assistance. Am I reading that wrong? Well, Your Honor, that's what the case says. You are reading that correctly. The question is, what exactly did the Rivers Court mean by that? And in the context of the statutory framework, where the only reason that they were not authorized, the ABC agents in that case, were not authorized to execute the search warrant is because it was not properly directed to them. Because Section 15-5-7 only requires that an officer to whom the search warrant is directed executed it. And the search warrant in that case was directed to the ABC agents at issue in the case. And I think that the other cases that Judge Wilson referred to are also construed in the context of the statutory framework. So there are some cases where the courts upheld searches under search warrants directed to law enforcement officers from the issuing county, as required by Section 15-5-5, who then requested the assistance of law enforcement officers from outside the issuing county, as permitted by Section 15-5-7. And the court held that the fact that officers outside the issuing county were present at the execution of the search warrant didn't vitiate the search warrant, because 15-5-7 expressly permits that. Examples of those cases are United States v. Martin in the Fifth Circuit and Reeves v. State. Now Palmer v. State and Hicks v. State, which Judge Wilson also mentioned, and on which the district court relied, don't address issues related to Section 15-5-5 or Section 15-5-7, because the courts in those cases found that there was independent authority under Section 12 of the Alabama Code for magistrate, for municipal judges, to issue search warrants to municipal officers. And so the court said that was an independent basis, without regard to Sections 15-5-5 and 15-5-7, authorizing search warrants at issue in those cases. This is Judge Wilson, but it's pretty clear in this case, though, that the Lauderdale County Deputy Sheriff was authorized to execute the warrant and actually executed the warrant, though, right? Judge Wilson, that's true, but the Lauderdale County Sheriff's Deputy, Charles Ford, participated in execution of the warrant at the request of Captain May from Colbert County. The warrant was not properly directed to Captain May in the first place, and therefore Captain May had no authority to execute the warrant or to request the assistance of others, because the only people who can do that are law enforcement officers to whom the search warrant is properly directed. Well, with the time that you have left, why don't you tell us why, if we accept your argument, the good faith exception to the evidence that either the Colbert or the Lauderdale County agents were not acting in good faith when they obtained and executed the warrant? Sure, Judge Wilson, I will do that, and my answer is found in the Alabama Supreme Court's decision in Ex Parte Turner, which is cited in our opening brief and our reply brief. In Ex Parte Turner, the facts of that case are that it involved an anticipatory search warrant, which the court ultimately concluded was not authorized by Alabama law, and the state there relied on good faith exception and said that, well, that's not the fault of the officers who executed the search warrant. They had a good faith basis to rely on the magistrate who issued the warrant, and that they had a valid warrant. The court there, nevertheless, held that the good faith exception did not apply and that the evidence had to be excluded, and the reason was that the warrant, in fact, was not valid. The officers were acting under an invalid warrant. The court that issued the warrant was required to follow the law, and the only way to enforce the rule of law, according to the Alabama Supreme Court, was to apply the exclusionary rule, and so in this case... Were the agents in that case aware of any defects in the warrant? They were not aware of defects in the warrant. The warrant was found by the court subsequent to execution to be... Give me the cite for that case again. I will. Okay. That's okay. It's in your brief? It's... Yes, it is in the brief, and it is 792 Southern 2nd, 1141. Okay. This is Judge Grant. Isn't the invalidity of the warrant in that case far more dramatic than it is here, in that the court held that the sort of search that was authorized was a search that was not authorized, that no anticipatory warrants were as opposed to here? I think we can fairly say it's best characterized as a technical violation, rather than a search that there would be no way to get a warrant for in the first place. Doesn't that leave a pretty big gap between this case and Turner? Your Honor, I have two responses to that question. Counsel, you have two minutes. Thank you. Your Honor, I have... Very briefly, I have two responses to that question. The first response is that I think that the point in Turner was that the warrant, in fact, was invalid. And here, too, the warrant was, in fact, invalid. And before we can worry about who executes the warrant, my second response... I'll let you get to your second response, but I have a follow-up on that. Isn't there a difference between invalidity under the Fourth Amendment and invalidity under a technical statute? Your Honor, in Turner, it's not clear that there was a Fourth Amendment violation. What the court said was that Alabama law did not authorize the anticipatory search at issue there. That doesn't mean that any anticipatory search would necessarily violate the Fourth Amendment. And if I may just briefly get to my second point about... With respect to whether this was a minor technical violation, the Alabama courts have not treated it that way. And the most recent example is Anderson v. State in 2018... I'm sorry, 2016 decision of the Alabama Court of Civil Appeals on just relying on Justice Lyons' concurring decision in State v. Property at 2018 Rainbow Drive. And that's the case, applying the rules of criminal procedure, where the court determined the warrant was addressed to the sheriff of Mobile County, even though it could have been executed by a police officer from the city of Mobile County, who was authorized to execute the warrant under the rules of civil procedure. And the court, nevertheless, held that the exclusionary rule applied to exclude the evidence obtained, because under 15-5-7, the officer was not an officer to whom the warrant was directed. And so there, even though there could have been a lawful search under existing law, the Alabama court still held that the exclusionary rule applied, and that the evidence needed to be presiding judge doesn't mind. Are you familiar with Hicks v. State and Palmer v. State? Yes, Your Honor. How would you set this case apart from those two cases, in that they declined to suppress evidence obtained through a search warrant that did violate 15-5-5 and 15-5-7? Your Honor, I distinguish those cases on the ground that the court there found that there was independent statutory authority for the warrants issued in that case. In particular, Section 12 of the Alabama Code authorized municipal judges to issue search warrants to police officers who then could execute them. And here, there was no independent authority, independent of Sections 15-5-5 and 15-5-7 authorizing the search warrant. And unless the court has additional questions for me at this time, I will reserve any further argument for rebuttal. All right. Thank you, Mr. Graf. And Mr. Anderson, you may proceed. Yes, Your Honor. May it please the court, I'm Rich Anderson for the appellee. This was an aggravated case of murder for hire in which Mr. Smith confessed to agreeing to kill Elizabeth Sennett in exchange for $1,000. Smith described his role in planning the crime, deceiving his victim, and delighting him and his make it look like a burglary. Colbert County authorities, in cooperation with the Lauderdale Sheriff's Office, discovered the VCR in a search of Smith's home. Smith now claims that the warrant which the Lauderdale County Sheriff's Office executed and returned was, quote, invalid on its face, close quote, because it was generally directed to any sheriff of the state of Alabama and not specifically directed to the Lauderdale County Sheriff. And the trial counsel was ineffective for not challenging the warrant on that ground. The first thing I would like to note is that Smith's argument... Does that mean that... This is Judge Wilson. Does that mean that the search warrant could have been conducted to law enforcement officers outside of Lauderdale County? I would say in this case that what matters is that the general form of address, any sheriff of the state of Alabama, included the Lauderdale County Sheriff. And when we look at the actual context of the case, as an Alabama court would have been sure to do, we see clearly abundant evidence that the warrant was executed by the Lauderdale County Sheriff's Department. So there was no danger in this case. That doesn't answer my question. Could a law enforcement officer outside of Lauderdale County have executed the search warrant? No, Your Honor. Well, could not have... That's correct. Let's say the Limestone County Sheriff could not have executed the search. Even though it was directed to any law enforcement officer of the state of Alabama? That's correct. The style the state would maintain, the style of the warrant, the direction of it is essentially a ministerial thing. And so long as it encompasses the officer who actually executes it and gives him authority, then it complies with what the legislature intended. I do want to note that... Mr. Anderson, this is Jill Pryor. Don't we have to read sections 15-5-5 and 15-5-7 to mean what they say? Doesn't your argument require us to ignore the plain language of those statutes? Well, Your Honor, the petitioner has taken a very hyper-technical approach to construing these statutes. And that's an approach that the state courts have specifically rejected when interpreting authorizing statutes and rules for search warrants. When we look at the Ushery case, which opposing counsel referred to a little while ago, it specifically rejected that idea of hyper-technical construction. But I want to point out, just as a practical matter, if you take this hyper-technical approach, then the only person who could carry out a search in any Alabama county would be the sheriff himself, and he would have to be present at every search. But it's clear from the whole scope of Alabama law in this time period that deputy sheriffs could conduct searches, deputized law enforcement officers could conduct searches, investigators could conduct searches. A strict reading of the rule would require it to be the sheriff himself, but of course, that's not the way the Alabama courts treat it. As Judge Pryor has recognized earlier, the courts- This is Judge Wilson. Why would the legislature specifically include in the statute the words, of the particular county? Because that's really the Rivers case, gives us a good idea of why the legislature did that, and tells us what the Alabama courts think about why the legislature did that. And in Rivers, it was because it was the intent of the legislature to ensure that local officials will be in charge of searches within their counties. And of course, that purpose was accomplished here. So the Alabama courts are going to look and have looked at these cases, challenges to search warrants, under this statutory scheme to see if the legislative purpose was achieved. And here it certainly was. But I want to make one point here that the fact that we're having this conversation and this argument about what the meaning of this statutory scheme is, is really the first and most glaring flaw in Smith's whole claim, because this is a very novel issue. It's a novel argument now, and it was a novel argument 20 years ago. We're here on a Sixth Amendment claim, of course, and that means that Smith doesn't just have to show that there's some possible argument about the statutory scheme it can raise. Under Strickland, he has to show that no reasonable counsel would have failed to raise this objection. As shown from our brief and from an extensive search of Alabama case law, it's clear that generally addressed search warrants have been in use since at least the 1970s. A site to a 1980 case from Colbert County, where a warrant was issued to any sheriff, constable, or law enforcement officer of the state of Alabama. That's Meade v. State, which is 390 Southern 2nd, 685-688. Lee County used them for over a decade. But the point being, in all this time when these types of generally addressed warrants were in use, not just no reasonable counsel, but apparently no counsel ever challenged a warrant on that ground. And that just demonstrates that petitioner cannot possibly show in this case that no reasonable counsel would have failed to raise an objection that no one has ever raised before. And I also would note that that is further buttressed by the fact that on direct appeal, the Court of Criminal Appeals engaged in plain error review because this is a capital case. The Court held that they, quote, searched the entire record for any error that may have adversely affected Smith's substantial rights and found none. That's, of course, Smith v. State at 908 Southern 2nd, 273 at 302. And this is when the warrant itself, there was actually a challenge to the warrant at trial. There was a suppression hearing. The warrant was at issue and certainly the Court of Criminal Appeals would have reviewed that entire warrant, including its style. They found no plain error. So certainly it was not something that leaped out to them. This Court and the United States Supreme Court have both noted that failure to raise a novel issue is a poor basis for an ineffective assistance claim. This Court's familiar with Engle v. Isaac, in which the Supreme Court stated that we've long recognized, however, that the Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not ensure that defense counsel will recognize and raise every conceivable constitutional claim. Pelmer v. White from this Court noted that trial counsel could reasonably overlook a novel issue. But even more than that, Petitioner is simply wrong about Alabama law and he's wrong about Rivers. The Rivers v. State case is the tentpole of Petitioner's argument, but it's also the Achilles heel. You can't understand the Rivers case without understanding the question presented there. The error alleged in Rivers was that a search warrant was issued to and executed by ABC agents when, quote, an ABC enforcement agent has no constitutional nor statutory authority to be issued a search warrant or to execute a search warrant. That's at 1022-406-7-1021, the Rivers case. The Court of Criminal Appeals' problem wasn't with the any part of the address, it was the ABC agent part. In addressing the question of whether ABC agents can execute a search, Rivers teaches us that 1555 and 1557 dictate that the sheriff of the particular county, as Petitioner has noted, in which the warrant is issued will execute the warrant so that a local official will be in charge of searches within his county. What the Rivers Court found significant was the fact that 1555 and 1557 exclude ABC agents from executing searches. And the Rivers holding doesn't do Smith any favors either. The Rivers Court held that because in accordance with 1555 and 1557, we find that in order to be legal, a search warrant must be executed by or at the direction of county officials. And that since the warrant was by ABC agents without the authority of county officials, the evidence had to be excluded. Contrary to Smith's arguments in his reply brief, the Rivers Court invalidated the warrant because no ABC agent, whatever county he was from, had authority to execute a warrant under 1555. The Court echoed its understanding of that scheme in Hixby State, which was 437, Southern 2nd, 1344, 1345, where it held that the obvious impact of 1555 and 1557 is that a local official will be in charge of searches within his county. And Judge Wilson, I recognize your concern about ensuring that that intent of the legislature is followed. And when we look at the facts in this case, in the record in this case, we see that the execution fully carried out that intent of the legislature and the intent of Rivers. The warrant was executed by Lauderdale County officials in cooperation with Colbert County. The incident narrative, which Smith made an exhibit at trial, details their investigative efforts including the investigation, information that led to obtain the warrant, how they worked together with Lauderdale County officials, principally the sheriff's investigator, Charles Ford, but also the district's attorney of Lauderdale County, personnel from the Lauderdale County DA's office, all of this in obtaining the warrant. When it came time to execute the warrant, the narrative, which was made an exhibit by the petitioner at the trial, and I'm looking at, or I'll cite the Court to Volume 6 of the warrant, a team was assembled to execute the warrant. And the record actually tells us who was on that team. Quote, present at the time of execution of the search warrant was investigator Charles Ford with Lauderdale County Sheriff's Department, Lauderdale County district attorney's investigator, Steve Bradford, Florence, and I will note that Florence is a city in Lauderdale County, Florence police detective Ricky Wilkes, Florence police detective Jeff Owen, investigator Ronnie May of Colbert County, and Lauderdale County district attorney Steve Graham. That in addition to the plain fact that when we look at the warrant itself in the petitioner's appendix at A551, it tells us exactly who executed the warrant. Right there at the bottom. It's a very bad fact for Mr. Smith, but this is what it says. Executed this the 31st day of March, describing what was seized, and by Charles Ford, investigator. I want to touch very briefly, because it's something that's not in the record, but it was referred to in petitioner's reply brief, and that was Charles Ford's testimony from the original hearing. Of course, because that is outside the record, the state would say this court shouldn't consider it, but having now found that portion of the first trial record, it is, if anything, it confirms the state's version of events and refutes petitioner's Ford was not in charge of executing it. Ford testifies clearly and extensively, well not extensively, but clearly to the fact that he executed the warrant because it was in Lauderdale County and not Colbert County. Again, going to Judge Pryor's questions about the good faith exception, the record in this case makes it clear to us that the officers involved knew what the legal requirements were. If you go back to that same testimony, you will find that the district's attorney of Lauderdale County drafted the search warrant. The people involved knew that the local authorities needed to be in charge of the local search. That's why Charles Ford was involved. That's why Charles Ford led the team to serve the warrant. That's why he executed the warrant. That's why Charles Ford made the that they punctiliously followed the requirements of 1555 and 1557 and the legislative intent and purpose of it. None of that would have any conflict with what the Court of Criminal Appeals set out. Doesn't that argument work both ways then? If they were aware of the requirements of statute, then they should have been diligent about ensuring that the search warrant was proper and who it authorized to execute the warrant. Your Honor, given that warrants directed to any sheriff were in general use and that no case had ever invalidated a warrant issued in that way, I don't believe that it could be shown that the officers involved or the magistrate who issued the warrant would have thought or would have had any reason to believe that this was an actual conflict as opposed to hyper-technical conflict with the statute. But even then, that would still leave the good faith exception, which I will turn to briefly. The petitioner has relied on, I'm sorry, the appellant has relied on the Ex Parte Turner case and I would distinguish the Turner case in one way is that the Spring-Gorton Turner, Alabama Spring-Gorton held that the magistrate himself should have been aware that, and I'm reading this, the district judge who issued this warrant was bound by the strictures of the law. The trial court had the obligation during the suppression hearing to determine whether any statute or procedure authorized anticipatory search warrants and of course it didn't. In this case, we are talking about a search by a person authorized to do the search. There's no reason to think that if it's a problem, the ministerial problem of the inclusive general nature of the address would have caused any issue with the good faith exception. I would point the court to a better case dealing with the good faith exception and one more contemporaneous to the actual trial at which counsel would have been having to make his arguments, which the courts would have been ruling. This is States v. Spivey, which is a court of criminal appeals case from 1994, which is 675 Southern 2nd, 1335. And in the Spivey case, the magistrate who issued the warrant put the wrong address on it. And the court noted that, this is at star page 1339, that quote, we agree with the trial court that it is not clear from the face of the warrant which house there was probable cause to search. Consequently, the warrant was invalid. However, we find that Deputy Roberts acted in good faith on the district court's telephone approval to complete the search of 607 Dublin Avenue and the evidence seized as a result of that was improperly suppressed. Applying a good faith exception where the officers essentially did everything right, where there's no indication of bad faith certainly on the part of the officers. And that's just what we have here. Let me ask you, let me turn to another question. Mr. Anderson, what inculpatory evidence was there admitted at the trial that is independent of what was obtained as a result of the execution of the Mr. Smith's statement itself? Yeah, they got the statement. They got his statement because they executed the search warrant and found the VCR in his house and then he confessed. But other than his statement and the VCR was in his house, I'm just curious, what was the brief make mention of several other from the trial record? I'm afraid as I sit here right now, I can't tell you what it all was, Your Honor. I'm sorry about that. Okay. All right. I want to turn back briefly to the question of whether the hyper-technical approach that Smith is applying here. The state's position is Smith can't show any actual violation of Rivers. The holding that, quote, in order to be legal, a search warrant must be executed by or at the direction of county officials because certainly that happened here. Instead, he's using this hyper-technical approach to insist that the ministerial act of the address of the warrant is the crucial issue, but it's not. The problem of this hyper-technical approach, as I referred to earlier, all we have to do is we look at usury, which again was prior to the trial in this case, the decision in usury, 668-7-922, with the injunction that we will not invalidate a search warrant by interpreting it in a hyper-technical rather than a common-sense manner. And the common-sense interpretation of the search warrant in this case, when we look at the evidence, while it is directed, quote, to any sheriff of the state of Alabama, we look at the actual circumstances it is given for execution and executed by Charles Ford. It's issued by the Lauderdale County District Court. All of these things in practical common-sense terms demonstrate that the warrant was intended for proper execution by personnel of the Lauderdale County Sheriff's Office. And to the extent that petitioner is arguing that somehow it's improper for an authority from outside the jurisdiction to request assistance in having a search warrant issued and served, that's, it's practically absurd because it would invalidate every cross-jurisdictional warrant in the state of Alabama that's properly executed by the local ex post facto argument on whether the rules of criminal procedure are retroactive here. I confess that I have not extensively looked into this because it's my belief that it's pretty clear that the statute was obeyed in common-sense terms. So, I have not considered whether the retroactive, where the Rule 1.5 would give cognizance to a retroactive application of the rule. But I do think it is informative to look at the rules that were actually promulgated by Alabama Supreme Court and whether they tell us anything about how important specific addresses in search warrants are to Alabama law. And of course, to that extent, the common practice now is everywhere universally to generally address the warrant to effectively anybody who can lawfully inform anyone inquiring into this about what the intent and important matters were to the Alabama courts at the time. Got it. Thanks. Let's see.  And I do want to address one question that Judge Pryor asked earlier where she referred to looking at the case law cited by the state and indeed much of the case law cited by Smith that the Court of Criminal Appeals and Alabama Supreme Court have tended to leniently. I would say that it's not leniently, but they've tended to consistently interpret these statutes in a way that's consistent with the intent of the legislature so as to give effect to that legislative intent. That's what they did in Rivers. That's what they've done in cases where you have been executed by municipal police officers who happened to be deputized agents from other jurisdictions in cooperation with local officers. Again, all of these things were calculated to and intended to make sure that that core issue, that local searches are in charge of local personnel, was observed. And in this case, it certainly was. And if there are no other questions, then I think we have your argument, Mr. Anderson. Thank you, Your Honor. The state would urge this court to affirm the judgment of the district court. Thank you. And Mr. Grass, you have reserved some time for rebuttal. Thank you, Your Honor. Just a few quick points. First, there was a lot of discussion about who executed the warrants, but that is respectfully the tail wagging the dog. The legislature could have written a statute that said that the warrant must be executed by a local law enforcement official. That's not how the statutory framework operates. Instead, the legislature said that the warrant must be directed to a local law enforcement official. And there is good reason for them to have done that, because a warrant directed, as it was in this case, to any sheriff in Alabama, although in some literal sense, may be construed to be directed to the Lauderdale County Sheriff, also is directed to the Pike County Sheriff, the Montgomery County Sheriff, the Mobile County Sheriff, Colbert County Sheriff, and every other sheriff in Alabama. And the legislature, to ensure that a local law enforcement officer would be in charge of the search, wanted to make sure that it was both directed to and therefore executed by a local law enforcement officer. Second... What do you... I'm sorry to interrupt, but I want to make sure I get your answer on this. What do you make of Mr. Anderson's argument that under Strickland, this issue, even if you would win on a merits question, would be way too close to assume that any reasonable lawyer would have made this argument? Yes, Your Honor. I was just about to get to that as my second point. Great. This issue was not a novel issue. The language of the statute is plain. The Rivers v. State, as construed in the context of the statutory framework, supports the argument. And although there has been a discussion, and I'm not sure I fully answered Judge Wilson's argument on my opening... I'm sorry, Judge Wilson's question on my opening argument, the other cases on which the state relies simply did not address this argument. So Meade v. State addresses the legality of an arrest warrant, doesn't address the search warrant. Dudley v. State addresses whether there was probable cause to issue the warrant, not whether it was probably properly directed and executed. And Haynes v. State holds only that a warrant was not invalid on the ground that a circuit judge issued a warrant on a county court form. So the case law here, the statute and Rivers lead to the conclusion that this warrant was invalidly directed and invalid, and the resulting search illegal and the evidence obtained from it should have been excluded. One final point is, I believe that Judge Wilson asked about what other evidence was there. Going to prejudice, I think it's clear, and the state has not disputed in this court, that Mr. Smith's capital murder conviction could not have been supported absent the VCR and the custodial statement. There is no fingerprint evidence, there is no blood evidence, there is nothing to tie Mr. Smith to the murder weapon. And the only thing other than the VCR and the custodial statement is testimony from various acquaintances of Mr. Smith, but that testimony, none of them were eyewitnesses. That testimony vaguely described Mr. Smith's statements about being hired to beat someone up, and that would have been consistent with trial counsel's strategy at trial, which was to negate the element of specific intent necessary for a capital murder conviction. And so there was no, there really is no dispute in this case that absent the seized evidence, this capital murder conviction would not have stood. And for the reasons that we've discussed, the court should reverse the judgment of the district court. And if there are no further questions for me, we will give back any remainder of our time. Well, thank you very much, Mr. Grass and Mr. Anderson. We appreciate your arguments. Thank you, Your Honor. And that concludes our proceeding this afternoon, and this court is now adjourned.  Thank you, Your Honor.